1
2
3
4
5

Jennifer L. Nye, AZ Bar. No. 019230
ARIZONA CENTER FOR DISABILITY LAW
100 N. Stone Ave., Suite 305
Tucson, AZ 85701
(520) 327-9547
jnye@azdisabilitylaw.org

Attorney for Plaintiffs

6
7

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETER ALVAREZ, by and through his
guardian RAMONA MENDOZA, ELENA
RIVERA, by and through her guardian
VIOLA RIVERA, OSMAR VAZQUEZ, by
and through his guardians SANDRA and
AGUSTIN VAZQUEZ, JACOB SIMMS, by
and through his guardian and medical power
of attorney JOSEPH and PAMELA SIMMS,
EMILY ROWLEY, by and through her
guardian, SHELLEY SIRRINE, LAURA
LILLO, by and through her guardian,
BARBARA LILLO, KATRINA WALSH,
ADRIAN VILLANUEVA, by and through
his guardian MICHELLE VILLANUEVA,
TAMERON CALAMITY, by and through his
guardian LILLIE CALAMITY, DEBORAH
WHITMAN, by and through her guardian,
TRUDI NOVAK, SUSAN WITTEN,
RAMONA MENDOZA, VIOLA RIVERA,
SANDRA  and AGUSTIN VAZQUEZ,
JOSEPH and PAMELA SIMMS, SHELLEY
SIRRINE, BARBARA LILLO, MICHELLE
VILLANUEVA,  LILLIE CALAMITY, and
TRUDI NOVAK, as individuals and
representatives of a class of persons similarly
situated,

                          Plaintiffs,

v.

ANTHONY D. RODGERS, Director of the
Arizona Health Care Cost Containment
System, in his official capacity, and the
ARIZONA HEALTH CARE COST
CONTAINMENT SYSTEM
ADMINISTRATION,
                          Defendants.

No. 09-CV-558-TUC-JMR

**AMENDED
COMPLAINT**

**CLASS ACTION**

**INTRODUCTION**

1.      This is a class action lawsuit brought to compel the Arizona Health Care Cost Containment System (AHCCCS), Arizona's Medicaid program, to provide incontinence briefs and supplies (hereinafter "incontinence briefs") for Medicaid eligible adults age 21 and over who are incontinent as the result of their disabilities.  Each Plaintiffs' doctor has prescribed incontinence briefs as medically necessary to prevent skin breakdown and infection and to allow integration into the community.  However, Defendants' policy is to only cover incontinence briefs for adults with disabilities age 21 and over to treat skin breakdown and/or infection, but not to prevent such skin breakdown and infection.  Defendants provide preventative incontinence briefs to adults with disabilities age 21 and over who live in institutions, such as nursing homes, but not when these adults live in the community.

2.      Adults with disabilities or their guardians purchase incontinence briefs with their own funds to prevent adverse medical conditions and to allow the person with the disability to be fully integrated into the community.  Plaintiffs live on very limited incomes and spend hundreds of dollars a month on incontinence briefs, often forcing them or their guardians to make difficult choices between paying for their health care needs or other necessities.  Without the incontinence briefs, Plaintiffs with disabilities would be confined to their homes and unable to participate in community, social, educational, and therapeutic activities, including day treatment programs, which require attendees who are incontinent to wear incontinence briefs.  Plaintiffs should not have to enter nursing homes or other institutions to receive medical supplies their doctors have determined to be medically necessary.

3.      On behalf of themselves and a class of similarly situated people with disabilities and guardians, Plaintiffs seek a ruling that this cruel policy violates federal Medicaid law, the Americans with Disabilities Act, and § 504 of the

Rehabilitation Act.  Plaintiffs also seek reimbursement for funds expended on incontinence briefs since their requests were denied.

**JURISDICTION AND VENUE**

4.      This action arises under Title XIX of the Social Security Act.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1343(a)(3) and (4), which give district courts original jurisdiction over actions to secure civil rights extended by the United States government.

5.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

6.      Venue for this action lies in this District pursuant to 28 U.S.C. § 1391(b).  A substantial number of the events or omissions giving rise to Plaintiffs' claims occurred here, and both Plaintiffs and Defendants may be found here.

**PARTIES**

7.      Plaintiffs Peter Alvarez, Elena Rivera, Osmar Vazquez, Jacob Simms, Emily Rowley, Laura Lillo, Katrina Walsh, Adrian Villanueva, Tameron Calamity, Deborah Whitman, and Susan Witten are people age 21 and over with developmental disabilities, traumatic brain injuries, and other disabilities who live in various cities throughout Arizona.  The Plaintiffs are each eligible for medical services from AHCCCS, Arizona's Medicaid program.  As a result of their disabilities,  Plaintiffs are incontinent of bowel and/or bladder.  Although they do not currently have skin breakdown, their physicians have prescribed incontinence briefs for them.  Defendant AHCCCS has denied Plaintiffs medically necessary incontinence briefs under the restrictive policy challenged in this lawsuit that requires skin breakdown and/or infection before incontinence briefs are provided.

8.      Plaintiffs Ramona Mendoza, Viola Rivera, Sandra and Agustin Vazquez, Joseph and Pamela Simms, Shelley Sirrine, Barbara Lillo, Michelle Villanueva, Lillie Calamity and Trudi Novak are the guardians of Plaintiffs with

disabilities and care for these Plaintiffs in their family homes.  Plaintiff Katrina Walsh is her own guardian and lives with her mother.  Susan Witten is her own guardian and lives with her husband.  Because the health  and well-being of the Plaintiffs with disabilities require that they use incontinence briefs in order to avoid skin breakdown and infection, and to enable them to be fully integrated into the community,  Plaintiff guardians supply the Plaintiffs with incontinence briefs at considerable personal cost, on average over $100 per month.  Plaintiffs Walsh and Witten also purchase incontinence briefs for themselves.

9.     Defendant Anthony D. Rodgers is the Director of the Arizona Health Care Cost Containment System (AHCCCS), Arizona's Medicaid program. Defendant Rodgers is sued in his official capacity as Director of the AHCCCS program.  As such, he has a duty to ensure that the AHCCCS program is administered in accordance with federal and state law.

10.     Defendant AHCCCS Administration (AHCCCSA) is the single state agency responsible for ensuring that health services are provided to eligible Arizona residents in compliance with federal Medicaid law, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396a-1396v, as well as state laws.  Defendant AHCCCSA contracts with acute care and long term care managed care organizations throughout the state to deliver a specified package of AHCCCS services in return for a monthly payment per beneficiary.  AHCCCS is a program and/or activity receiving federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. § 794.

**CLASS ALLEGATIONS**

11.     Pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, Plaintiffs bring this suit on behalf of a statewide class of persons similarly situated, as well as  individually.  The class consists of two subclasses. First, a class of persons age 21 and over who are eligible for AHCCCS services and who need incontinence briefs as the result of a disability.  Second, a class of guardians and people with disabilities who have purchased incontinence briefs at

- 4 -

personal cost.

    a.  This class is so numerous that joinder of all members is impracticable;

    b.  Defendants have acted on grounds generally applicable to the class;

    c.  There are questions of law as to the legality of Defendants' policies and practices with respect to coverage of incontinence briefs for AHCCCS beneficiaries that are common to all members of the class;

    d.  The Plaintiffs have claims that are typical of the claims of the class members;

    e.  The Plaintiffs will fairly and adequately protect the interests of the class members; and

    f.  Defendants  have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

### STATUTORY AND REGULATORY FRAMEWORK

  12.  The federal Medicaid statute, Title XIX of the Social Security Act, is codified at 42 U.S.C. §§ 1396a-1396v.  It authorizes states to establish medical assistance programs for low income and disabled individuals who meet certain eligibility requirements.  These medical assistance programs are jointly funded by the federal and state governments, and are designed by the states within a framework of options and requirements established under the Medicaid statute. The objective of the Medicaid Act is to furnish "rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care."  42 U.S.C. § 1396.

  13.  Participation in the Medicaid program is voluntary.  However, once a state elects to participate, it must comply with all the provisions of the Medicaid Act and implementing regulations. *See* 42 U.S.C. § 1396a.

14.     The Medicaid Act lists mandatory and optional Medicaid services. Home health services are a mandatory service for any individual who is entitled to nursing facility services.  42 U.S.C. § 1396a(a)(10)(D).  *See also* 42 U.S.C. § 1396d(a)(7) (listing "home health care services" as medical assistance).

15.     Regulations implementing the Medicaid Act home health provisions require states to provide "[m]edical supplies, equipment, and appliances suitable for use in the home."  42 C.F.R. § 440.70(b)(3); 42 C.F.R. § 441.15(a)(3). Incontinence briefs are a type of medical supply.

16.     A State must establish reasonable standards, consistent with the objectives of the Medicaid Act, for determining the extent of coverage of medical supplies and other home health supplies.  *See* 42 U.S.C. § 1396a(a)(17).  In doing so, a state must ensure that the amount, duration, and scope of coverage are reasonably sufficient to achieve the purpose of the service.  42 C.F.R. § 440.230(b).  Furthermore, a State may not impose arbitrary limitations on mandatory services, such as home health services, based solely on diagnosis, type of illness, or condition.  42 C.F.R. § 440.230( c).

17.     Arizona participates in Medicaid.  A.R.S. §§ 36-2901 to 36-2959. The Arizona Medicaid program, AHCCCS, is run under a Section 1115 Waiver, 42 U.S.C. § 1315, from the federal government.  A Section 1115 Waiver permits states to waive otherwise mandatory requirements of the Medicaid Act.  In addition to its Section 1115 Waiver, Arizona also submits a Medicaid state plan to the federal government, which describes the nature and scope of its Medicaid program and gives assurances that it will be administered in conformity with the specific requirements of the Medicaid Act and regulations.

18.     AHCCCS provides both acute care services and long term care services.  Long term care services are delivered through the Arizona Long Term Care System (ALTCS), a division of AHCCCS.  A.R.S. § 2931-2959.  To be eligible for ALTCS services, the AHCCCS member must be at risk for institutionalization.  However, ALTCS services may be delivered in either an

- 6 -

institution or the member's own home.

19.     Arizona's 1115 Waiver lists home health services and medical supplies as covered services.  Section 1115 Waiver at 11-12 and 15-16, available at http://www.azahcccs.gov/reporting/LawsRegulations/federal/waiver.aspx

20.     Arizona's Medicaid state plan also lists home health services and medical supplies as covered services.  State Plan, §§ 3.1(a)(1)(vi), 3.1(b), and Attachment 3.1-A,  available at http://www.azahcccs.gov/reporting/PoliciesPlans/stateplan.aspx#State_Plan_for_Medicaid

21.     The AHCCCS statute lists specific items and services that the program provides to eligible persons when medically necessary.  Such items and services include medical supplies.  A.R.S. §§ 36-2907(A)(6), 36-2939(A)(5), 36-2939(B)(2)(a), and 36-2939(C)(1).

22.     AHCCCS regulation defines "medically necessary" as "a covered service provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law to prevent disease, disability, or other adverse health conditions or their progression, or prolong life."  A.A.C. R9-22-101(B).

23.     Medical supplies are defined in AHCCCS regulation and policy as "consumable items that are designed specifically to meet a medical purpose."  A.A.C. R9-22-201 and Policy 310-P, AHCCCS Medical Policy Manual; *see also* A.A.C. R9-22-212(B) and A.A.C. R9-28-205(C)(3).

24.     Incontinence briefs are a type of medical supply and are included in the AHCCCS nursing home rate.  Exhibit 1210-2, Policy 1210, AHCCCS Medical Policy Manual.

25.     AHCCCS Policy 310-P of the AHCCCS Medical Policy Manual requires that the following criteria be used in determining coverage of medical supplies:

> a.     Medical necessity in setting up and/or maintaining the member in the most appropriate setting while maximizing the member's independence and functional level, both physically

- 7 -

and mentally, and

b. The most reasonable and cost effective alternative to provide medically necessary services in the most appropriate setting and maximizing the member's independence.

26. It is AHCCCS policy to only cover incontinence briefs for those age 21 and over to treat skin breakdown and infection, but not to prevent skin breakdown and infection. Defendants' coverage standard is articulated in both regulation and policy:

a. A.A.C. R9-22-212(5) states that:

Except for incontinence briefs for persons over age 3 years old and under 21 years old as provided in subsection (6), personal care items including items for personal cleanliness, body hygiene, and grooming are not covered unless needed to treat a medical condition. Personal care items are not covered services if used solely for preventative purposes.

b. A.A.C. R9-22-212(6) states, in relevant part, that:

Incontinence briefs, including pull-ups, are covered to prevent skin breakdown and enable participation in social, community, therapeutic and educational activities under the following circumstances:

1. The member is over age 3 years old and under 21 years old;

2. The member is incontinent due to a documented disability that causes incontinence of bowel or bladder;

3. The PCP or attending physician has issued a prescription ordering the incontinence briefs . . .

c. Policy 310-P of the AHCCCS Medical Policy Manual states that:

Personal care items are not covered unless needed to treat a medical condition except for limited conditions described herein. The AHCCCS program covers incontinence briefs for members over age 3 and under age 21 as described in Chapter 400, Policy 430. Except for incontinence briefs as described in Policy 430, personal care items are not covered solely for preventative purposes. Personal care items include items of personal cleanliness, hygiene and grooming....AHCCCS **does not** cover the following: (1) Personal care items, unless needed to treat a medical condition. Exception: AHCCCS covers incontinence briefs for persons over age 3 and under age 21 as described in Policy 430.

- 8 -

27.     Title II of the Americans with Disabilities Act (ADA) and § 504 of Rehabilitation Act of 1973 prohibits state and local governments from discriminating against people with disabilities in the provision of public services, programs, and activities.  42 U.S.C. §§ 12131-12134 (ADA); 29 U.S.C. § 794(a) (§ 504).

28.     Both acts also prohibit segregation of people with disabilities to institutions and require services, programs and activities of state and local governments to be administered in "the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d) (ADA); 28 C.F.R. § 41.51(d) (§ 504).

29.     Both acts also require that reasonable modifications be made to policies, practices, and procedures to avoid discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(7) (ADA); 29 U.S.C. § 794(a) (§ 504).

### STATEMENT OF FACTS

**Plaintiffs Peter Alvarez and Ramona Mendoza**

30.     Plaintiff Peter Alvarez is 27 years old and lives with his mother and guardian Plaintiff Ramona Mendoza in Tucson, Arizona.

31.     Peter is currently eligible for services from AHCCCS.  His AHCCCS acute care health plan is Arizona Physicians IPA (APIPA) and his ALTCS plan is the Division of Developmental Disabilities (DDD).

32.     Peter has had severe developmental disabilities from birth.  He is diagnosed with cerebral palsy and spastic quadraplegia.  He has limited cognitive ability and he cannot speak.  He is only able to control the movements of his head and face and he is transported in a wheelchair, although he is unable to move the wheelchair himself.  Peter needs assistance with all activities of daily living.

33.     Due to his disabilities, Peter is completely incontinent of both bladder and bowel.  Peter is also unable to communicate to his caretakers that he needs to or has moved his bowels or urinated.

34.     Peter's medical condition did not improve upon turning age 21.

35.     Peter needs incontinence briefs to prevent skin breakdown and infection and to participate in his day treatment program, which requires attendees who are incontinent to wear briefs.

36.     In March 2008, Peter's primary care physician prescribed incontinence briefs for him to prevent the dermatitis and skin breakdown that would result from sitting in wet and soiled undergarments.

37.     On May 2, 2008 APIPA denied the request for incontinence briefs, stating that "the service is not covered for adults 21 years or older."

38.     Ramona Mendoza appealed this denial and DDD upheld the denial on October 7, 2008 on the basis that:

> diapers are a covered benefit for persons aged 3 to 21 only, unless there is evidence of skin breakdown and the use of diapers is part of the treatment of skin breakdown.  Mr. Alvarez is 27 years old and the records submitted for review do not show any indication that Mr. Alvarez has any skin breakdown.

39.     Ramona Mendoza again appealed, and an administrative hearing was held on December 4, 2008.

40.     Peter did not have any skin breakdown at the time of the hearing, but has had skin breakdown in the past.

41.     On March 12, 2009, the administrative law judge issued a decision in Peter's favor.  The ALJ rejected DDD's argument that briefs do not prevent skin breakdown, and found that:

> Dr. Weiss [APIPA Medical Director] clarified that briefs can be an important part of a skin care regimen to prevent skin breakdown in the form of pressure sores.  While briefs may not be the sole factor or even the most important factor in the regimen, their proper use is a preventable measure for skin breakdown.  As such, the definition of medical necessity is met.  Here, Complainant is a severely disabled person who cannot move his own body or tell others when he has to urinate or defecate.  It is important that his caregivers take measures to prevent skin breakdown at the areas that are prone to skin breakdown because of his condition. This includes incontinence briefs.

42.     On April 2, 2009, the AHCCCS Director modified the ALJ's decision and rejected the ALJ's finding of medical necessity.  The AHCCCS Director held that incontinence briefs are only medically necessary for people age 21 and over when they are requested to treat a medical condition, and are not medically necessary when needed to prevent skin breakdown.

43.     Ramona Mendoza has purchased incontinence briefs for Peter in order to prevent skin breakdown and infection and to allow Peter to participate in meaningful social, community, and therapeutic activities, including his day treatment program.

44.     Peter's only income is $674 per month from Social Security.  The incontinence briefs cost upwards of $100 per month.

**Plaintiffs Elena Rivera and Viola Rivera**

45.     Plaintiff Elena Rivera is 23 years old and lives with her parents, including her mother and guardian, Plaintiff Viola Rivera, in Tucson, Arizona.

46.     Elena is currently eligible for services from AHCCCS.  Her AHCCCS acute care health plan is APIPA and her ALTCS plan is DDD.

47.     Elena has been severely disabled from birth and is diagnosed with hydrocephalus, spastic quadriplegic cerebral palsy, seizure disorder, severe developmental delays, dislocation and dysplasia of her hips, and scoliosis requiring rods to be placed in her back.  She also suffers from cortical blindness. She is non-ambulatory, non-verbal, and is fed through a gastronomy tube. She requires assistance in all activities of daily living.

48.      Due to her disabilities, Elena is completely incontinent of both bladder and bowel.  She is also unable to communicate to her caretakers that she needs to or has moved her bowels or urinated.

49.      Elena needs incontinence briefs to prevent skin breakdown and infection and to participate in meaningful social, community, and therapeutic activities.  Elena is currently on the waiting list for a day program for medically fragile individuals.  The program requires that attendees use disposable

incontinence briefs and she will not be able to attend the program if she is not wearing briefs.

50.   Prior to turning age 21, Elena's AHCCCS health plans paid for incontinence briefs.

51.   Elena's medical condition did not improve upon turning age 21.

52.   On December 4, 2008, Elena's primary care physician prescribed incontinence briefs for her.  Her physician stated that:

> Due to Elena's chronic medical problems, especially immobility and incontinence, it is critically important for Elena to be provided with diapers.  Appropriate incontinence supplies are medically necessary to promote the health and integrity of her skin.  Elena's medical problems will continue for the rest of her life.  Appropriate incontinence supplies are medically necessary to promote good skin integrity.  If appropriate supplies are not provided, severe skin rashes, skin breakdown, and decubitus ulcers could result.  These complications of inadequate skin care are not only extremely debilitating and dangerous for the patient, but also enormously costly for the health care insurers.  Skin injury often entails a very lengthy recovery period with many interventions and significant expense.

53.   Elena did not have any current skin breakdown or infections at the time of this prescription.

54.   On December 22, 2008, APIPA denied her doctor's request for incontinence briefs, stating that "Diapers to support daily living or prevent skin breakdown are not a covered benefit.  Also, the medical information received does not show that the need for diapers is to treat a medical condition."

55.   Viola Rivera appealed this denial and DDD upheld the denial on April 15, 2009 on the basis that "Briefs are not a covered benefit for members over age 21.  The Medical Director advises that Diapers/Incontinence Briefs are not provided to promote the skin integrity of the member."

56.   Plaintiffs did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

- 12 -

57.    Viola Rivera has purchased incontinence briefs for Elena in order to prevent skin breakdown and infection and to allow Elena to participate in meaningful social, community, and therapeutic activities, including day treatment.

58.    Viola Rivera also relies on donations of briefs from friends and Elena's DDD case manager, but such donations are not always available.

59.    When donations are available, Viola Rivera spends about $62 every six weeks for briefs.  When donations are not available, she must spend more on the briefs.

60.    Viola Rivera has had to cut other necessary expenses to ensure that Elena has all the briefs she needs.  In addition, Elena recently lost her dental coverage and Viola Rivera must now pay for Elena's dental expenses out-of-pocket.  Viola Rivera is concerned that she will have to choose between paying for Elena's necessary briefs and her necessary dental care.

61.    Elena's only income is approximately $700 per month from Social Security.

**Plaintiffs Osmar Vazquez, Sandra Vazquez, and Agustin Vazquez**

62.    Plaintiff Osmar Vazquez is 24 years old and lives with his parents and legal guardians, Plaintiffs Sandra and Agustin Vazquez in Tucson, Arizona.

63.    Osmar is currently eligible for services from AHCCCS.  His AHCCCS acute care plan is APIPA and his ALTCS plan DDD.

64.    Osmar is diagnosed with severe Cerebral Palsy, intractable seizures, and chronic lung disease. He also has osteoporosis, dislocated hips, and has rods along his spine to correct scoliosis.  He requires assistance in all activities of daily living, including feeding as he is fed through a gastronomy tube.  He is unable to purposefully move any part of his body, including his head.  He is non-ambulatory and non-verbal.  Although he uses a wheelchair, he is unable to move the wheelchair himself.

65.    Due to his disabilities, Osmar is completely incontinent of both bladder and bowel.  He is also unable to communicate to his caretakers that he

- 13 -

needs to or has moved his bowels or urinated.

66.    Osmar's medical condition did not improve upon turning age 21.

67.    Osmar needs incontinence briefs to prevent skin breakdown and infection and to participate in his day treatment program, which requires attendees who are incontinent to wear briefs.

68.    Prior to age 21, APIPA/DDD provided Osmar with incontinence briefs.

69.    On November 29, 2006, APIPA denied Osmar's doctor's request for incontinence briefs on the basis that he did not meet the rules for coverage because he was 21 years old.

70.    Plaintiff Sandra Vazquez appealed this denial and on February 26, 2007, DDD reversed the denial finding that:

> The provider submitted a letter of medical necessity stating this member's need for diapers is due to the member's bladder and bowel incontinence with severe developmental delays.  The provider has stated that it is critically important for appropriate incontinence supplies to be provided to this member to promote health and integrity of his sensitive skin.  If the appropriate supplies are not provided, severe skin rashes, skin breakdown, and decubitus ulcers could result.  The provider also shows a concern that inadequate skin care can cause extreme debilitating and dangerous skin conditions that can be enormously costly for the health care insurers.  Stating that skin injury entails a very lengthy recovery period with many interventions and significant expenses.

71.    Osmar did not have skin breakdown or infections at the time of the February 2007 approval.

72.    APIPA again denied incontinence briefs for Osmar on January 8, 2008 on the basis that he was over age 21.  Sandra Vazquez again appealed the decision, but DDD upheld the denial on May 14, 2008.  Osmar's medical condition had not improved between February 2007 and January 2008.

73.    On December 15, 2008, Osmar's primary care physician again requested coverage of incontinence briefs from APIPA.  The doctor stated the following as the basis for his request:

- 14 -

Due to Osmar's chronic medical problems, especially immobility and incontinence, it is critically important for Osmar to be provided with diapers. Appropriate incontinence supplies are medically necessary to promote the integrity of his sensitive skin. If appropriate supplies are not provided, severe skin rashes, skin breakdown, and decubitus ulcers could result. Osmar was seen very recently by the primary care doctor and a skin assessment was done. Please see the attached documentation. Complications of inadequate skin care are not only extremely debilitating and dangerous for the patient, but also enormously costly for health care insurers. Skin injury often entails a very lengthy recovery period with many interventions and significant expense.

74.     Over the past year, Osmar's skin has become more suceptible to rashes and he develops redness that can take up to ten days to clear. At the time of the December 15, 2008 prescription, he did not have skin breakdown or infection, but without the briefs, he would be much more susceptible to such occurrences.

75.     On March 10, 2009, APIPA denied Osmar's doctor's request for incontinence briefs, stating that:

The AHCCCS program only covers incontinence briefs (diapers) for individuals who are at least 3 years old and only until their 21st birthday. Diapers to support daily living or prevent skin breakdown are not a covered benefit. Also, the medical information received does not show that the need for diapers is to treat a medical condition.

76.     Plaintiff Sandra Vazquez appealed this denial. On May 24, 2008, DDD upheld the denial stating that "diapers are not a covered benefit for persons over age 21 in the absence of a complicating medical conditions."

77.     Plaintiffs did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

78.     Sandra Vazquez purchases incontinence briefs for Osmar in order to prevent skin breakdown and infection and to allow Osmar to participate in meaningful social, community, and therapeutic activities, including day treatment.

79.     Sandra Vazquez also relies on donations of briefs from

- 15 -

friends, relatives, and Osmar's DDD case manager, but such donations are not always available.

80.     Osmar's only income is $634 per month from Social Security.  The incontinence briefs cost upwards of $100 per month.

**Plaintiffs Jacob Simms, Joseph Simms, and Pamela Simms**

81.     Plaintiff Jacob Simms is 24 years old and lives with his father and guardian, Plaintiff Joseph Simms, and his stepmother and power of attorney, Plaintiff Pamela Simms, in Phoenix, Arizona.

82.     Jacob is eligible for services from AHCCCS.  His acute care health plan is APIPA and his ALTCS plan DDD.

83.     Jacob has had severe developmental disabilities from birth.  He is diagnosed with severe mental retardation, a seizure disorder, and scoliosis so severe that it required placement of rods in his back.  As a result of his disabilities, he is non-verbal and uses a wheelchair for mobility, although he cannot independently move the chair.  He needs assistance with all activities of daily living.

84.     Due to Jacob's disabilities, he is incontinent of both bladder and bowel.  He is also unable to communicate to his caretakers that he needs to or has moved his bowels or urinated.

85.     Jacob's medical condition did not improve upon turning age 21.

86.     Jacob needs incontinence briefs to prevent skin breakdown and infection and to participate in meaningful social, community, and therapeutic activities.

87.      In 2007, APIPA denied coverage of  incontinence briefs on the basis that Jacob was over age 21.  Pamela Simms appealed this denial, and on August 20, 2007, DDD reversed the denial.   Jacob did not have any skin breakdown or infection at the time of the denial or approval.

88.     On February 19, 2009, APIPA again denied coverage of incontinence briefs on the basis that "Diapers to support daily living or prevent

skin breakdown are not a covered benefit."

89.     Pamela Simms again appealed this denial and an administrative law

judge entered a decision in Jacob's favor on July 29, 2009.  The ALJ found that

> The weight of credible evidence at hearing established that disposable briefs are medically necessary for the Complainant to aid in the prevention of skin breakdown and to make it possible for him to participate in social and community activities.

90.     On September 3, 2009, the AHCCCS Director modified the ALJ's

decision and rejected the ALJ's finding of medical necessity.  The AHCCCS

Director held that incontinence briefs are only medically necessary for people age

21 and over when they are requested to treat a medical condition, and are not

medically necessary when needed to prevent skin breakdown.

91.     Jacob did not have any skin breakdown or infection at the time of the

denial or hearing, but has had skin breakdown and infections in the past.

92.     Joseph and Pamela Simms have purchased incontinence

briefs for Jacob in order to prevent skin breakdown and infection and to allow

Jacob to participate in meaningful social, community, and therapeutic activities.

93.     Jacob's  only income is $620 per month from Social Security.  The

incontinence briefs cost upwards of $300 per month.

94.      The cost of Jacob's incontinence briefs makes it difficult for

Joseph and Pamela Simms to afford other necessary medical items that are not

covered by AHCCCS, such as gloves, wet wipes, ointments to prevent skin rash,

chux, and dental care, and leaves Jacob with very little to meet his other living

expenses.

**Plaintiffs Emily Rowley and Shelley Sirrine**

95.     Plaintiff Emily Rowley is 22 years old and lives with her mother and

guardian, Plaintiff Shelley Sirrine, in Mesa, Arizona.

96.     Emily is currently eligible for services from AHCCCS.  Her

AHCCCS acute care plan is APIPA and her ALTCS plan is DDD.

97.     Emily has had severe developmental disabilities since birth.  She is

- 17 -

diagnosed with static encephalopathy, quadriplegic cerebral palsy, and severe mental retardation. Because of her condition, Emily is fully dependent upon others to help her dress, bathe, groom, feed, and toilet. She uses a wheelchair, but is unable to move the wheelchair herself.

98.    Due to her disabilities, Emily is completely incontinent of both bladder and bowel. She is also unable to communicate to her caretakers that she needs to or has moved her bowels or urinated.

99.    Emily's medical condition did not improve upon turning age 21.

100.    Emily needs incontinence briefs to prevent skin breakdown and infection and to participate in her day treatment program, which requires attendees who are incontinent to wear briefs.

101.    Prior to age 21, APIPA and DDD provided incontinence briefs for Emily.

102.    On February 29, 2008, APIPA issued a notice denying incontinence briefs on the basis that "APIPA does not pay for this service because it is not covered for adults 21 years or older. You will turn 21 on 3/18/08."

103.    Shelley Sirrine appealed this denial and DDD upheld the denial on April 22, 2008, stating that:

> Arizona Physicians IPA correctly states in their denial that diapers are not a covered benefit for persons over age 21. For the prevention of decubitus ulcers, the use of 'Chux' or similar bed pads should meet the clinical needs. However, should there be evidence of skin breakdown, the family may request diapers as part of the medical treatment of decubitus ulcers.

104.    Shelley Sirrine represented herself *pro se* at an administrative hearing on August 11, 2008. On September 25, 2008, the AHCCCS Director issued a decision upholding the denial.

105.    Shelley Sirrine requested a new hearing because Emily's doctor was unable to attend and testify at the August 11, 2008 hearing.

106.    The request for a new hearing was granted and Emily's primary care physician testified at the new hearing that incontinence briefs are medically

- 18 -

necessary for Emily to prevent skin breakdown and infection.

107.   Emily's doctor also stated that:

> The briefs also allow Emily to participate in social, community, therapeutic, and educational events.  If she did not wear briefs, she would not be able to leave her home.  The incontinence briefs are an essential medical supply to prevent the secondary adverse health conditions—skin breakdown and infections—that will result from Emily's incontinence if she does not use briefs.  Although keeping Emily clean and turning her are also important parts of preventing the adverse health effects of incontinence, these are not enough without the use of briefs.  Briefs are essential to preventing skin breakdown and infection because they wick the moisture away from the skin.  In my opinion, incontinence briefs used by adults with disabilities who are incontinent are not a hygiene item, but a medical supply because the briefs are used solely because the person has a medical condition—incontinence.

108.   Emily did not have any skin breakdown or infections at the time of either hearing.

109.   On May 15, 2009, the AHCCCS Director again upheld the denial on the basis that "the evidence did not show that incontinence briefs were used to treat a medical condition."

110.   Shelley Sirrine purchases incontinence briefs for Emily in order to prevent skin breakdown and infection and to allow Emily to participate in meaningful social, community, and therapeutic activities, including day treatment.

111.   Emily's only income is $674 per month from Social Security.  The incontinence briefs cost upwards of $125 per month

112.    The cost of Emily's incontinence briefs makes it difficult for Shelley Sirrine to afford other necessary medical items that are not covered by AHCCCS, such as gloves, wet wipes, ointments to prevent skin rash, and dental care.

**Plaintiffs Laura Lillo and Barbara Lillo**

113.   Plaintiff Laura Lillo is 25 years old and lives with her parents, including her mother and guardian, Plaintiff Barbara Lillo, in Mesa, Arizona.

114.   Laura is currently eligible for services from AHCCCS and ALTCS. Her ALTCS plan is Evercare.

- 19 -

115.    In 2001, when she was 18 years old, Laura suffered a severe traumatic brain injury as the result of an accident.  Due to that injury, she has severe spastic quadraplegia, is non-verbal, and eats via a feeding tube.  She uses a wheelchair, but is unable to move the chair herself.  She requires assistance for all activities of daily living.

116.    Due to her disabilities, Laura is incontinent of both bowel and bladder.  She is unable to communicate to her caretakers that she has or needs to move her bowels or urinated.

117.    Laura's medical condition did not improve upon turning age 21.

118.    Laura needs incontinence briefs to prevent skin breakdown and infection and to a participate in meaningful social, community, and therapeutic activities.

119.    On December 10, 2008, Laura's primary care physician prescribed incontinence briefs and supplies as medically necessary to prevent skin breakdown and infection.  Laura did not have skin breakdown or infection at the time of her doctor's request.

120.    On February 18, 2009, Evercare denied the request for incontinence briefs on the basis that "AHCCCS does not pay for briefs for members who are 21 years of age or older."

121.    Plaintiffs did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

122.    Barbara Lillo purchases incontinence briefs for Laura to prevent skin breakdown and infection and to allow Laura to participate in meaningful social, community activities.  Without incontinence briefs, Laura would not be able to leave her home.

123.    Laura's only source of income is $674 per month from Social

Security.  Incontinence briefs cost upwards of $300 per month.  The cost of the briefs limits and prevents the purchase of other necessary daily living items and medical items, such as dental care and therapies, that are not covered by AHCCCS.

**Plaintiff Katrina Walsh**

124.    Plaintiff Katrina Walsh is 24 years old and lives in Phoenix, Arizona.

125.    Katrina is eligible for services from AHCCCS and ALTCS.  Her ALTCS plan is Mercy Care Plan.

126.    At 18 months old, Katrina had a cancerous tumor removed from her spinal cord.  She suffered neurological damage from the tumor and its removal and was subsequently diagnosed with incomplete quadraplegia and a neurogenic bladder.  On April 2, 2007, Katrina underwent spinal decompression surgery, which left her with complete quadraplegia and incontinent of both bowel and bladder.  As a result of her disabilities, she uses a wheelchair for mobility and needs assistance with most activities of daily living.  Due to her disabilities, Katrina is susceptible to bladder infections.

127.    As a result of her disabilities, Katrina is incontinent of both bladder and bowel.  She also has frequent bladder spasms which results in a near constant flow of urine.  She is also unable to feel and report any symptoms of skin breakdown or infection.

128.    Katrina's medical condition did not improve when she turned 21.

129.    Katrina needs incontinence briefs to prevent skin breakdown and infection and to a participate in meaningful social, community, and therapeutic activities.

130.    Katrina's ALTCS health plan provided her with incontinence briefs for approximately six years when she was under the age of 21.  However, in 2002, her plan terminated coverage on the ground that the briefs were only covered if she had current skin breakdown and infection, but not to prevent skin breakdown and infection.  Katrina appealed this denial and the administrative law judge found in

her favor. However, the AHCCCS Director overturned the decision on the basis that briefs are only provided to treat, not prevent, a medical condition.

131.    On January 6, 2008, Katrina's primary care physician again requested coverage of incontinence briefs on the basis that:

> Under AHCCCS's own definition of medical necessity, briefs should be covered as a service, which prevent adverse health conditions namely skin breakdown and infection or their progression. If briefs were not provided, Katrina would constantly be sitting in her own wet clothes or feces. This would be cruel and unsanitary if it would lead to skin breakdown, rashes, sores, infections, and possibly even death. Her low immunity system increases her chance of infections. Without briefs, Katrina would be peeing and defecating all over, for example on beds, furniture, and in cars. Obviously this would destroy her health (mental and physical) and require someone to be there constantly to clean her up.

132.    Katrina did not have skin breakdown or infection at the time of her doctor's request.

133.    On March 17, 2009, Katrina received a Notice of Action from Mercy Care Plan denying her doctor's request for incontinence briefs on the basis that "Mercy Care Plan does not cover diapers for members over age 21."

134.    Katrina did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

135.    Katrina purchases incontinence briefs to prevent skin breakdown and infection and to allow her to participate in meaningful social, community activities. Without incontinence briefs, she would not be able to leave her home.

136.    Katrina's only source of income is $660 per month from Social Security. She spends upwards of $200 per month on briefs. The cost of the briefs limits and prevents the purchase of other necessary daily living items and medical items, such as dental care, that are not covered by AHCCCS.

**Plaintiffs Adrian Villanueva and Michelle Villanueva**

137.    Plaintiff Adrian Villanueva is 34 years old and lives with his

- 22 -

mother and guardian, Plaintiff Michelle Villanueva, in San Tan Valley, Arizona.

138.     Adrian is currently eligible for services from AHCCCS.  His AHCCCS acute care plan is APIPA and his ALTCS plan DDD.

139.     Adrian suffered a traumatic brain injury as the result of an automobile accident in 1991.  His disabilities include spastic quadraplegia, cognitive impairments, and a history of seizures.  As a result of his injury, Adrian cannot control any aspect of daily care. He is non-verbal and completely unable to direct movement of his extremities.  He has been deemed as "total-care" by all medical personnel involved in his care.  He is fed via a J-tube and uses a wheelchair for mobility, although he is unable to move the wheelchair himself.

140.     Adrian will never improve or recover from his injuries

141.     Due to his disabilities, Adrian has complete bowel and bladder incontinence.  He is unable to communicate to his caretakers that he has or needs to move his bowels or urinated.

142.     Adrian needs incontinence briefs to prevent skin breakdown and infection and to participate in meaningful social, community, and therapeutic activities.  Adrian currently attends a day treatment program, which requires attendees with incontinence to wear incontinence briefs.

143.     On January 9, 2008, Adrian's primary care physician wrote a letter of medical necessity for incontinence briefs and other incontinence supplies and submitted a prescription for the briefs to APIPA.  Adrian's doctor stated that the briefs and supplies were medically necessary to prevent skin breakdown and infection, but Adrian did not have skin breakdown or infection at the time of the prescription.

144.     An APIPA employee verbally told Michelle Villanueva that briefs are not a covered service.  APIPA never provided Michelle Villanueva with a written denial notice, despite several requests.

145.     Plaintiffs did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's

longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

146.     Michelle Villanueva has routinely purchased incontinence briefs for Adrian to prevent skin breakdown and infection and to allow him to participate in meaningful social, community, and therapeutic activities, including his day treatment program.

147.     Adrian received some assistance with the costs of his briefs from state-only funds distributed by DDD.  However, this funding stopped in 2003 and has not been available since.

148.     Adrian's only income is $674 per month from Social Security.  The incontinence briefs cost upwards of $100 per month.  The cost of the briefs limits and prevents the purchase of other necessary daily living items and medical items, such as dental care, that are not covered by AHCCCS.

**Plaintiffs Tameron Calamity and Lillie Calamity**

149.     Plaintiff Tameron Calamity is 24 years old and lives with his parents, including his mother and guardian, Plaintiff Lillie Calamity, in Tonalea, Arizona.

150.     Tameron is eligible for services from AHCCCS.  His acute care health plan is Capstone and his ALTCS plan is DDD.

151.     Tameron has had severe developmental disabilities from birth.  He is diagnosed with cerebral palsy, cognitive disability, and a grand mal seizure disorder.  As a result of his disabilities, Tameron is non-verbal and needs assistance with all activities of daily living, including moving, dressing, eating, and bathing.  He uses a wheelchair, although he cannot move the wheelchair himself.

152.     Due to his disabilities, Tameron is completely incontinent of both bladder and bowel.  He is also unable to communicate to his caretakers that he needs to or has moved his bowels or bladder.

153.   Tameron's medical condition did not improve when he turned 21 years old.

154.   On December 10, 2008, Tameron's primary care physician prescribed incontinence briefs for him to prevent skin breakdown and infection. Tameron did not have skin breakdown or infection at the time of this prescription.

155.   This letter and prescription was submitted to DDD, but Lillie Calamity has never received a written response or denial.  Tameron's DDD case manager has verbally told Lillie Calamity that incontinence briefs are not covered for adults.

156.    Plaintiffs did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

157.    Lillie Calamity purchases incontinence briefs for Tameron in order to prevent skin breakdown and infection and to allow Tameron to participate in meaningful social, community, and therapeutic activities.  Without the briefs, Tameron would be unable to leave his home

158.   Tameron's only income is $685 per month from Social Security. The briefs cost approximately $140 per month.  The cost of the briefs limits and prevents the purchase of other necessary daily living items and medical items, such as dental care, that are not covered by AHCCCS.

**Plaintiffs Deborah Whitman and Trudi Novak**

159.    Plaintiff Deborah Whitman is 57 years old and lives in Tucson, Arizona.  Her legal guardian is her sister, Plaintiff Trudi Novak.

160.   Deborah is currently eligible for services from AHCCCS.  Her ALTCS plan is DDD.

161.   Deborah is diagnosed with autism, severe cognitive disabilities, and a seizure disorder.  She cannot speak and requires assistance with all activities of

daily living.

162.    Due to her disabilities, Deborah is incontinence of both bladder and bowel.  She is also unable to communicate to her caretakers that she needs to or has moved her bowels or urinated.

163.    Deborah needs incontinence briefs to prevent skin breakdown and infection and to enable her to attend her day treatment program, which requires attendees who are incontinent to wear briefs.

164.    Before moving to the community, Deborah lived at the Arizona Training Program at Coolidge, a state run intermediate care facility for the mentally retarded (ICF-MR).  The facility at Coolidge provided her with incontinence briefs.

165.    After she moved to Tucson, DDD provided Deborah's briefs using state money.  However, on July 27, 2009, Ms. Novak received a notice that DDD would stop paying for briefs.  Ms. Novak asked about DDD coverage and was also told by Deborah's DDD case manager that DDD would not provide the briefs.

166.    Deborah did not have any skin breakdown or infection at the time that DDD covered the briefs or at the time that Ms. Novak requested continued coverage.

167.    Plaintiffs did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

168.    Ms. Novak has purchased incontinence briefs for Deborah to prevent skin breakdown and infection and to allow Deborah to participate in meaningful social, community, and therapeutic activities, including day treatment.

169.    Deborah's only income is $750 per month from SSI.  Deborah's rent is $400 and the briefs cost approximately $300 per month.

**Plaintiff Susan Witten**

170.     Susan Witten is 51 years old and lives with her husband in Phoenix, Arizona.

171.     Susan is eligible for services from AHCCCS.  Her ALTCS health plan is Mercy Care Plan.

172.     Susan suffered significant injuries in an automobile accident in January 2006, and as a result, has quadrapledigia.  She needs assistance with all activities of daily living and uses a power wheelchair for mobility.

173.     Due to her disabilities, she is incontinent of both bowel and bladder. She is also unable to communicate to her caregivers that she needs to or has moved her bowels or urinated.  In addition, she has a history of urinary tract infections.

174.     Susan needs incontinence briefs to prevent the skin breakdown and infection that would result from sitting in wet and soiled undergarments.

175.     Susan and her husband have repeatedly asked several Mercy Care Plan staff to cover incontinence briefs and supplies.  However, each Mercy Care staff person said that briefs and other incontinence supplies were not covered. Susan was never advised that she could request coverage of incontinence briefs and was never provided any written denial notice.

176.     At the time of the request for coverage, Susan did not have any skin breakdown or infection.

177.     Plaintiff did not file an administrative appeal of the incontinence briefs denial because an administrative appeal would be futile given AHCCCS's longstanding policy prohibiting coverage of incontinence briefs for preventative purposes for those age 21 and over and Defendant Rodgers' practice of issuing unfavorable decisions in all administrative appeals of such denials.

178.     Susan purchases briefs out-of-pocket to prevent skin breakdown and infection and to be able to participate in meaningful social, community, and therapeutic activities.

179.     Susan's briefs cost approximately $303 per month.

**CLAIMS FOR RELIEF**

FIRST CLAIM FOR RELIEF:
VIOLATION OF THE MEDICAID STATUTE AND REGULATIONS

180.   Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

181.   The Defendants' regulation, A.A.C. R9-22-212, policy, Policy 310-P of the AHCCCS Medical Policy Manual, and practice of denying Plaintiffs coverage of incontinence briefs to prevent skin breakdown and infection violates the Medicaid Act requirement that home health services, including medical supplies, be provided to Medicaid members.  42 U.S.C. § 1396a(10)(D); 42 U.S.C. §1396d(a)(7).

182.   This violation, which has been repeated and knowing, entitles Plaintiffs to relief under the Federal Civil Rights Act, 42 U.S.C. § 1983.

SECOND CLAIM FOR RELIEF:
VIOLATION OF THE MEDICAID STATUTE AND REGULATIONS

183.   Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

184.   The Defendants' regulation, A.A.C. R9-22-212, and policy, Policy 310-P of the AHCCCS Medical Policy Manual, which denies Plaintiffs coverage of incontinence briefs to prevent skin breakdown and infection, is contrary to the Medicaid Act requirement that home health services, including medical supplies, be provided to Medicaid members, 42 U.S.C. § 1396a(10)(D) and 42 U.S.C. §1396d(a)(7), and is thus preempted by the Supremacy Clause of the United States Constitution, art. IV.

THIRD CLAIM FOR RELIEF:
VIOLATION OF THE MEDICAID STATUTE AND REGULATIONS

185.   Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

186.   The Defendants' regulation, A.A.C. R9-22-212, and policy, Policy 310-P of the AHCCCS Medical Policy Manual, which denies Plaintiffs coverage

of incontinence briefs to prevent skin breakdown and infection, is contrary to the reasonable standards requirements of the Medicaid Act, 42 U.S.C. § 1396a(a)(17), and interpretive federal regulations and guidelines, and is thus preempted by the Supremacy Clause of the United States Constitution, art. IV.

**FOURTH CLAIM FOR RELIEF:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

187.   Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

188.   Defendants' policy of providing preventative incontinence briefs to those living in nursing homes, but not to those living in the community, violates the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and its implementing regulations, which prohibits discrimination on the basis of disability, requires that services be made available in the community, rather than in institutions, where to do so meets the needs of qualified individuals with disabilities, and requires that reasonable modifications be made to the program to avoid discrimination on the basis of disability.

**FIFTH CLAIM FOR RELIEF:**
**VIOLATION OF § 504 OF THE REHABILITATION ACT**

189.   Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

190.   Defendants' policy of providing preventative incontinence briefs to those living in nursing homes, but not to those living in the community, violates § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and its implementing regulations, which prohibits discrimination on the basis of disability, requires that services be made available in the community, rather than in institutions, where to do so meets the needs of qualified individuals with disabilities, and requires that reasonable modifications be made to the program to avoid discrimination on the basis of disability.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully ask that this Court:

1.      Assume jurisdiction over this action.

2.      Certify this action is maintainable as a statewide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.      Issue a declaratory judgment holding that Defendants' regulation, A.A.C. R9-22-212, policy, Policy 310-P of the AHCCCS Medical Policy Manual, and practice of denying Plaintiffs coverage of incontinence briefs prescribed by their physicians as medically necessary to prevent skin breakdown and infection and to permit integration into the community violates the Medicaid Act and its regulations, the Americans with Disabilities Act and its regulations, and the Rehabilitation Act and its regulations, and are thus invalid.  42 U.S.C. § 1396a(10)(D); 42 U.S.C. § 1396d(a)(7); 42 U.S.C. § 1396a(a)(17); 42 U.S.C. §§ 12131-12134; and 29 U.S.C. § 794(a).

4.      Issue a permanent injunction prohibiting Defendants from denying Plaintiffs coverage of incontinence briefs needed to prevent skin breakdown and infection and necessary to allow Plaintiffs to be integrated into the community.

5.      Issue an order requiring Defendant AHCCCS to reimburse Plaintiffs for the cost of incontinence briefs purchased since AHCCCS denied their requests for coverage of the briefs.

6.      Award Plaintiffs reasonable attorneys' fees and costs.

7.      Grant such other and further relief as may be just and proper.

Respectfully submitted this 23rd day of October, 2009.

ARIZONA CENTER FOR DISABILITY LAW


 s/Jennifer L. Nye
Jennifer L. Nye
Attorney for Plaintiffs